IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LEROY FEARS,                              )
       Petitioner,                    )         Civil Action No. 05-cv-1421
                    )
       v.                             )         Judge Kim R. Gibson
                    )
JOHN E. WETZEL, et al.,                   )
       Respondents.                   )

## MEMORANDUM OPINION

Before the Court is Leroy Fears' *Motion For Discovery Pursuant to Rule 6(A) and Combined Memorandum of Law*. [ECF No. 48]. For the reasons stated below, the Court will deny the motion in all respects.

I.    **Relevant Background**

On December 8, 1994, Fears appeared before the Court of Common Pleas of Allegheny County and entered a plea of guilty to first-degree murder, corruption of minors, two counts of involuntary deviate sexual intercourse ("IDSI") and abuse of a corpse. The victim was a 12-year-old boy whose body was discovered in the Monongahela River in June 1994. See Commonwealth v. Fears, 836 A.2d 52, 56-58 (Pa. 2003) ("Fears I"). Sumner L. Parker, Esquire, was Fears' trial counsel.

Fears' case was a capital one, and his non-jury penalty hearing was conducted on February 2, 1995. Christine Martone, M.D., testified at the sentencing hearing. She stated that during the incident with the victim, Fears was overtaken with a sexual urge, acted upon that urge,

1

and when the victim threatened to report what Fears had done, Fears panicked and killed the victim. Dr. Martone opined that Fears' sexual impulse and subsequent panic impaired his judgment. She also stated that Fears' alcohol consumption may have further impacted his judgment and impulse control. Commonwealth v. Fears, 86 A.3d 795, 801-02 (Pa. 2014) ("Fears II") (citing 2/2/95 Sent. Hr'g Tr. at 114-16).

At the conclusion of the sentencing hearing, the trial court found one aggravating circumstance: the killing was committed in perpetration of a felony, specifically IDSI. 42 Pa.C.S. § 9711(d)(6). The court also determined that Fears proved the catch-all mitigating circumstance of evidence concerning his character, record, and circumstances of the offense. Id., § 9711(e)(8). The court held that the aggravator outweighed the mitigator, and imposed a death sentence for the murder conviction. See Fears II, 86 A.3d at 802.

Caroline Roberto, Esquire, was Fears' attorney in post-sentence and direct appeal proceedings. In those proceedings, Fears raised numerous claims that his trial counsel, Attorney Parker, provided him with ineffective assistance in violation of his Sixth Amendment rights. Among the many claims that Fears raised was that Attorney Parker was ineffective for failing to investigate and present available mitigating evidence at his sentencing hearing (specifically, failing to retain a defense psychiatric expert; relying on a county expert and a presentence investigation report prepared by a county probation officer that contained damaging information as the primary source of mitigation evidence; and failing to provide Dr. Martone with medical and psychological background information about him in preparation for her testimony). See

2

Brief in Support of Post Sentence Relief, Common Pleas Docket ("CP Dkt") No. 42 at 38-52.

Fears I, 836 A.2d at 71-72.

The trial court presided over a two-day evidentiary hearing on June 27 and 28, 2000.

Fears presented the testimony of Attorney Parker; Dr. Ralph E. Tarter, who testified as an expert

(at the time he was a professor of pharmaceutical science and psychiatry, and his disciplinary

specialty was clinical psychology and neuropsychology); and, City of Pittsburgh Detective

Richard C. Fox. The Pennsylvania Supreme Court briefly summarized some of the evidence

introduced at the evidentiary hearing as follows:

> At the evidentiary hearing, trial counsel [Attorney Parker] testified that
> there was nothing about the way [Fears] conducted himself or the manner in
> which [Fears] was able to communicate that caused counsel to believe that [Fears]
> was in need of a psychiatric evaluation. Evidentiary Hearing at 94. Nevertheless,
> due to the nature of the crime, at the sentencing hearing, trial counsel presented
> the testimony of Dr. Christine Martone, the Chief Psychiatrist of the Allegheny
> County Behavior Clinic....
>
> [Fears] contends that such investigation and presentation of mitigation
> evidence was insufficient. According to [Fears], an adequate investigation would
> have revealed that: [Fears] was prematurely born to a twelve-year old girl and
> suffered from cardiac arrest within one hour of his birth, causing severe lack of
> oxygen to his brain; [Fears] was placed in foster care a few months after his birth;
> and [Fears] suffered from serious mental illness. At the evidentiary hearing,
> appellate counsel [Attorney Roberto] presented the testimony of Dr. Ralph Tarter,
> who diagnosed [Fears] with severe psychopathology including schizoid
> personality disorder and schizoaffective disorder. Evidentiary Hearing at 196.[21]
> Dr. Tarter opined that the lack of secure attachment and bond within the first
> months of life created a scenario consistent with [Fears'] adult behavior.
> Evidentiary Hearing at 208-212. Dr. Tarter testified that he would have been
> available to testify at the penalty phase to both psychiatric mitigators, that [Fears]
> was acting under extreme mental and emotional disturbance, 42 Pa.C.S.
> § 9711(e)(2), and that his capacity to appreciate the criminality of his conduct or
> to conform his conduct was substantially impaired, 42 Pa.C.S. § 9711(e)(3).

3

[21] Dr. Tarter examined birthing records from Magee Women's Hospital, Allegheny County CYS records, and school records, and performed various psychological tests on [Fears] in October of 1999. Dr. Martone did not examine these same records in making her diagnosis.

Fears I, 836 A.2d at 72-73.

The trial court denied Fears' post-sentence motion. See Order of Court, CP Dkt. No. 47; June 4, 2002, trial court opinion, CP Dkt. No. 55. Fears, through Attorney Roberto, pursued a direct appeal. On November 20, 2003, the Supreme Court of Pennsylvania issued Fears I, the decision in which it affirmed the trial court's verdict and sentence of death. Before addressing Fears' claims of Attorney Parker's ineffective assistance, the Pennsylvania Supreme Court explained:

This Court recently abrogated the procedural rule requiring new counsel to raise claims of previous counsel's ineffectiveness at the first opportunity when new counsel was appointed. Commonwealth v. Grant, 572 Pa. 48, 813 A.2d 726 (2002). In Grant, we announced a new general rule providing that a defendant "should wait to raise claims of ineffective assistance of trial counsel until collateral review." 813 A.2d at 738. Our decision was based on the fact that claims of ineffectiveness were not suited for direct appeal due to the lack of a trial court opinion addressing the issues as well as the lack of an evidentiary record upon which the appellate court could review the claims. We held that the new rule applies retroactively to "any other cases on direct appeal where the issue of ineffectiveness was properly raised and preserved." Id.

In Commonwealth v. Bomar, 573 Pa. 426, 826 A.2d 831, 2003 Pa. Lexis 920 (2003), however, we held that where the concerns that arose in Grant did not exist, i.e., where there was a trial court opinion addressing the claims of ineffective assistance and there was an adequate record devoted to the ineffectiveness claims, our court would proceed to consider the ineffectiveness claims on direct appeal. The instant case is primarily controlled by our decision in Bomar, as the trial court opinion addressed [Fears'] allegations of ineffective assistance of counsel and an evidentiary hearing was held where trial counsel

4

testified as to his strategy in the case. Thus, we will examine [Fears'] claims alleging ineffective assistance of counsel.

Fears I, 836 A.2d at 59. Later in its opinion, the Pennsylvania Supreme Court denied on the merits Fears' claim that Attorney Parker was ineffective with respect to his efforts in investigating and presenting mitigating evidence at the sentencing hearing. Id. at 71-74. On February 27, 2005, the United States Supreme Court denied a petition for a writ of certiorari. Fears v. Pennsylvania, 545 U.S. 1141 (2005).

On October 11, 2005, the Governor issued a warrant of execution and the Federal Public Defender Office for the Western District of Pennsylvania ("Western District FPDO") filed a motion for appointment of counsel and for a stay of execution. [ECF No. 1]. On October 17, 2005, this Court[1] issued an Order appointing the Western District FPDO to represent Fears in this habeas proceeding and granting the motion for stay of execution. [ECF No. 2].

The following month, in November 2005, a prisoner named Winfred Milner sent the Court of Common Pleas of Allegheny County *pro se* motions for relief on Fears' behalf. See CP Dkt. No. 57. The state court appointed Thomas N. Farrell, Esquire, to represent Fears and counsel filed a petition for relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541 *et seq.* on Fears' behalf. See CP Dkt. Nos. 58, 63. Attorney Farrell

---

[1]     This case was originally assigned to the Honorable Arthur J. Schwab. It was stayed from 2006 to 2014 during which time Fears litigated his collateral remedies in state court. The stay in this case was lifted in August 2014, Judge Schwab recused himself, and the case was assigned to a new judge.

subsequently filed a motion for leave to withdraw and the PCRA court appointed John Elash, Esquire, to represent Fears. See CP Dkt. Nos. 65, 66.

On February 8, 2006, the Federal Community Defender Office for the Eastern District of Pennsylvania, Capital Habeas Corpus Unit ("Eastern District CDO"), filed a motion to dismiss the PCRA petition that Attorney Farrell had filed. See CP Dkt. No. 67. On March 20, 2006, the PCRA court held a hearing on the Eastern District CDO's motion for appointment of counsel, see 3/20/06 Hr'g Tr., and the PCRA court subsequently issued an order in which it permitted Attorney Elash to withdraw and ordered that the Eastern District CDO shall serve as counsel for Fears in the PCRA proceeding. See CP Dkt. No. 72.

Due to the ongoing PCRA proceeding before the state court, this Court issued an Order staying this federal habeas case on May 9, 2006. [ECF No. 31].

On June 15, 2006, Fears, through the Eastern District CDO, filed an Amended PCRA Petition, in which he raised 23 claims, including numerous claims that direct appeal counsel (Attorney Roberto) provided him with ineffective assistance in violation of his Fourteenth Amendment rights in the manner in which she had litigated claims of trial counsel's (Attorney Parker's) ineffectiveness. CP Dkt. No. 77. The PCRA court denied the Amended PCRA Petition without a hearing and Fears, through the Eastern District CDO, filed an appeal.

On February 19, 2014, the Pennsylvania Supreme Court issued an Opinion (Fears II) in which it affirmed the PCRA court's decision. One of the claims that Fears raised in that appeal was that Attorney Roberto was ineffective for failing to properly litigate the claim that

Attorney Parker was ineffective in his investigation and presentation of mitigating evidence at the sentencing hearing.[2] The Pennsylvania Supreme Court denied this claim on the merits. Fears II, 86 A.3d at 803, 811-17.

After the PCRA proceeding concluded, the stay in this case was lifted and Fears, through his counsel with the Western District FPDO, filed a Petition for Writ of Habeas Corpus and Consolidated Memorandum of Law. [ECF No. 36]. Pending before the Court is Fears' motion for discovery [ECF No. 48], which the Commonwealth opposes [ECF No. 52].

## II.     Rules governing discovery in a § 2254 action

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997); see Harris v. Nelson, 394 U.S. 286, 300 (1969) ("broad-ranging preliminary inquiry is neither necessary nor appropriate in the context of a habeas corpus proceeding."). Discovery is

---

[2]     The Pennsylvania Supreme Court explained:

When reviewing [Fears'] ineffectiveness assertions, given that [Fears'] counsel raised many claims of trial counsel ineffectiveness on direct appeal, the only viable claims before us are ones challenging the effectiveness of appellate counsel's performance in identifying and pursuing claims post-verdict and on direct appeal. Newly-alleged ineffectiveness claims of trial counsel are pertinent only insofar as they prove that appellate counsel was ineffective; therefore, we must focus appellant's layered ineffectiveness claims only upon appellate counsel's actions. See Commonwealth v. McGill, 574 Pa. 574, 832 A.2d 1014, 1022 (2003) (citation omitted) (defendant can only prevail if he establishes counsel initially litigating collateral claims of trial counsel ineffectiveness himself performed below constitutional standards).

Fears II, 86 A.3d at 803 n.8.

authorized in Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Court only by leave of court upon a showing by the petitioner of "good cause," which may be made "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief[.]" Harris, 394 U.S. at 300; see Bracy, 520 U.S. at 908-09; Lee v. Glunt, 667 F.3d 397, 404 (3d Cir. 2012).

Several important factors must be considered by a federal district court when evaluating a petitioner's request for discovery in a § 2254 action. First, the "burden rests upon the petitioner to demonstrate that the sought-after information is pertinent and that there is good cause for its production." Williams v. Beard, 637 F.3d 195, 209 (3d Cir. 2011). Second, "bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or to require an evidentiary hearing." Zettlemoyer v. Fulcomer, 923 F.2d 284, 301 (3d Cir. 1991). Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir. 1987). Third, Rule 6 does not authorize what is commonly referred to as "fishing expeditions." This is related to the requirement that a petitioner's request for discovery be based upon specific factual allegations regarding a claim before the court. It is not enough for a petitioner to speculate that the discovery he seeks might yield information that would support one of his claims or that it would give support to a new claim. See, e.g., Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir. 1994) (quoting with approval Munoz v. Keane, 777 F.Supp. 282, 287 (S.D.N.Y. 1991), which explained: "petitioners are not entitled to go on a fishing expedition through the government's files in hopes of finding some damaging evidence"); Williams, 637 F.3d at 210-11 (the petitioner's discovery

8

request "amounts to an entreaty to engage in a fishing expedition. The law is clear, however, that such speculative discovery requests should be rejected.").

## III. Discussion

Fears seeks discovery on Claim II of his Petition, in which he alleges that Attorney Parker was ineffective for failing to investigate and present available mitigating evidence at the sentencing hearing, and also that Attorney Roberto was ineffective in litigating that underlying claim on direct appeal.[3] The specific information that Fears seeks relates to his paternal biological family. Fears is the biological son of Leonard Charles, who was the son of Rosetta Stevenson (also known as Rosetta Robinson). Fears explains in his motion for discovery:

> ... PCRA counsel [the Eastern District CDO] presented voluminous evidence in the form of hundreds of pages of social service, medical and mental health records of Mr. Fears, his maternal biological family and his foster family. See Exhibits to the PCRA Petition. However, PCRA counsel failed to produce any evidence pertaining to Mr. Fears' **paternal** biological family. Claim II alleges that because PCRA counsel failed to investigate and present such evidence, such counsel failed to effectively challenge trial counsel's underlying ineffectiveness for failing to investigate and present compelling evidence of Mr. Fear' paternal family history of pedophilia, mental illness and alcoholism.

---

[3]    Fears also alleges that the Eastern District CDO provided him with ineffective assistance during the PCRA proceeding. Because he did not have a right under the U.S. Constitution to counsel during his state post-conviction proceeding, Pennsylvania v. Finley, 481 U.S. 551, 555 (1987), a claim that his PCRA counsel was ineffective is not a cognizable claim in this federal habeas case. 28 U.S.C. § 2254(i) ("[t]he ineffectiveness of counsel during Federal or State collateral post-conviction proceedings shall not be ground for relief in a proceeding arising under section 2254."). See also Coleman v. Thompson, 501 U.S. 722, 752-53 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings.... Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. See Wainwright v. Torna, 455 U.S. 586 (1982) (where there is no constitutional right to counsel there can be no deprivation of effective assistance.)").

[ECF No. 48 at 2-3 (emphasis in original)].

Fears requests that the Court issue a discovery order that contains the following language:

(a) The Pittsburgh Police shall produce any and all documents pertaining to Leonard Charles (DOB XX-XX-1946 and SSN XXX-XX-2778, now deceased), including but not limited to the events involving Steven Burg on or around February, 1978 and at Criminal Action CC-78-01122A;

(b) Dr. Marshall M. Johnson, Jr. or any third-party with custody or control over his medical files and records shall produce any and all documents pertaining to the examination of Steven Burg on or around February 22, 1978; and

(c) The Allegheny County Department of Human Services (DHS) shall produce any and all documents pertaining to:

> (1) Rosetta Stevenson a/k/a Rosetta Robinson (and any other aliases) (DOB XX-XX-1929 and SSN XXX-XX-4844, now deceased);
>
> (2) Leonard Charles a/k/a Leonard Stevenson (and any other aliases) (DOB XX-XX-1946 and SSN XXX-XX-2778, now deceased);
>
> (3) Dorothy Elizabeth Fears a/k/a Dorothy Johnson Fears a/k/a Dorothy Richardson (and any other aliases) (DOB XX-XX-1933 and SSN XXXXX-1521); and
>
> (4) Daniel Fears (DOB XX-XX-1972).

[ECF No. 48, Proposed Order attached to Motion for Discovery]. Fears also has filed an *ex parte* and under seal supplement to his motion for discovery in which he requests an order directing the DHS to produce additional documents. [ECF No. 51].

Fears acknowledges that the sub-claim that his prior attorneys were ineffective for failing to investigate his **paternal** biological family is procedurally defaulted because the Eastern District CDO failed to raise it in his PCRA proceeding. [ECF No. 36, ¶ 211; ECF No. 48

10

at 2-3]. A petitioner can overcome the default of a claim, thereby allowing federal court review, if he can demonstrate "cause" for the default, *i.e.*, that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice." Coleman, 501 U.S. at 750. See also Murray v. Carrier, 477 U.S. 478, 488, 494 (1986). Fears argues that he can overcome the default of the sub-claim at issue because the Eastern District CDO was ineffective for failing to litigate it. He asserts that he can rely upon the ineffectiveness of the Eastern District CDO to establish "cause" for his default under the rule announced in Martinez v. Ryan, — U.S. —, 132 S.Ct. 1309 (2012) and clarified in Trevino v. Thaler, — U.S. —, 133 S.Ct. 1911 (2013).

Fears' reliance on Martinez and Trevino is misplaced. Neither decision applies to his case. In Coleman, the Supreme Court held that ineffectiveness of state post-conviction counsel (in this case, the Eastern District CDO) cannot qualify as "cause" for a default. Coleman, 501 U.S. at 752-54. See also Norris v. Brooks, — F.3d —, 2015 WL 4509368, *3 (3d Cir. July 27, 2015); Cox v. Horn, 757 F.3d 113, 119 (3d Cir. 2014), cert. denied sub nom. 135 S.Ct. 1548 (2015). In Martinez, the Supreme Court created a "narrow" and "limited qualification" to the rule in Coleman. Martinez, 132 S.Ct. at 1315, 1319. It held that where state law requires that claims of ineffective assistance of **trial counsel** be raised for the **first time** in a collateral proceeding,[4] a

---

[4]     Arizona law did not permit the petitioner in Martinez to argue on direct appeal that her trial counsel was ineffective. 132 S.Ct. at 1314 (citing State v. Spreitz, 202 Ariz. 1, 3, 39 P.3d 525, 527 (2002). "Arizona instead requires claims of ineffective assistance at trial to be reserved for state collateral proceedings." Id.

federal habeas petitioner may be able to establish "cause" sufficient to overcome a procedural

default of a "substantial" claim of trial counsel's ineffectiveness if the collateral counsel was

ineffective (or there was no counsel in the collateral proceeding).[5] Martinez, 132 S.Ct. at 1321.

The Supreme Court called collateral proceedings that provide the **first occasion to raise claims**

**of ineffective assistance of trial counsel** "initial-review collateral proceedings," and it limited

the rule announced in Martinez to initial-review collateral proceedings. 132 S.Ct. at 1315-21.[6]

In Trevino, "the Supreme Court clarified that the Martinez rule applied not only to states

that expressly denied permission to raise ineffective assistance claims on direct appeal (such as

Arizona, which Martinez address), but also to states in which it was 'virtually impossible,' as a

---

[5] The Supreme Court based its decision in Martinez on what it determined to be an equitable right to seek relief from a procedural default in a federal habeas matter. It did not hold that a petitioner has a constitutional right to counsel in initial-review collateral proceedings such as the PCRA. Martinez, 132 S.Ct. at 1313-21. See also Cox, 757 F.3d at 124 ("Martinez did not announce a new constitutional rule or right for criminal defendants, but rather an equitable rule prescribing and expanding the opportunity for review of their Sixth Amendment claims.")

[6] In Martinez, the Court explained:

Where, as here, the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim. This is because the state habeas court "looks to the merits of the clai[m]"of ineffective assistance, no other court has addressed the claim, and "defendants pursuing first-tier review ... are generally ill equipped to represent themselves" because they do not have a brief from counsel or an opinion of the court addressing their claim of error. Halbert v. Michigan, 545 U.S. 605, 617, 125 S.Ct. 2582, 162 L.Ed.2d 552 (2005); see Douglas, 372 U.S., at 357-358, 83 S.Ct. 814.

132 S.Ct. at 1317 (bracketed text in Martinez).

practical matter to assert an ineffective assistance claim before collateral review [such as in

Texas, which Trevino addressed]." Cox, 757 F.3d at 119 (quoting Trevino, 133 S.Ct. at 1915).

As the Court of Appeals for the Third Circuit explained in Cox:

> Texas law, at issue in Trevino, ostensibly permitted (though it did not require) criminal defendants to raise ineffective assistance of trial counsel claims on direct appeal. In practice, however, Texas' criminal justice system "[did] not offer most defendants a meaningful opportunity" to do so. Id. at 1921. As the Texas courts themselves had observed, trial records often lacked information necessary to substantiate ineffective assistance of trial counsel claims, and motion filing deadlines, coupled with the lack of readily available transcripts, generally precluded raising an ineffective assistance claim in a post-trial motion. Moreover, the Texas courts had invited, and even directed, defendants to wait to pursue such claims until collateral review. The Court "conclude[d] that where, as [in Texas], state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal, [the] holding in Martinez applies." Id.

757 F.3d at 119-20 (bracketed text in Cox).

Fears' PCRA proceeding was not an "initial-review collateral proceeding" as defined by

Martinez, and it certainly was not "'virtually impossible,' as a practical matter,"[7] Cox, 757 F.3d at

119 (quoting Trevino, 133 S.Ct. at 1915), to raise his claims of ineffective assistance of trial

---

[7]    In Cox, the Court of Appeals for the Third Circuit declined to decide whether, through Trevino, the holding in Martinez applied to the pre-Grant paradigm in Pennsylvania. Cox, 757 F.3d at 124 n.8. Similar to Fears, the petitioner in Cox litigated his direct appeal prior to Grant. However, in Cox, unlike the situation in Fears' case, the same attorney represented the petitioner at trial and on direct appeal and, therefore, the petitioner in Cox was not obligated to assert claims of ineffective assistance of trial counsel on direct appeal. In Fears' case, Attorney Parker represented Fears at trial and Attorney Roberto represented him in his post-sentence and direct appeal proceedings. Attorney Roberto raised numerous claims that Attorney Parker provided Fears with ineffective assistance, there was record development on those claims, and the Pennsylvania Supreme Court reviewed and denied those claims in Fears I.

counsel in his post-sentence and direct appeal proceedings. Fears, through Attorney Roberto, raised numerous claims of ineffective assistance of trial counsel, the trial court conducted a two-day evidentiary hearing on those claims, and the Pennsylvania Supreme Court ruled on the merits of those claims in its direct appeal decision in Fears I.

Based upon all of the foregoing, the sub-claim upon which Fears' seeks discovery is procedurally defaulted and Fears has not established "cause" to overcome that default. Coleman, 501 U.S. at 752-54. Since the sub-claim at issue is procedurally defaulted,[8] he is not entitled to discovery on it and, therefore, his motion for discovery is denied.

An appropriate Order follows.

BY THE COURT:

Kim R. Gibson
United States District Court Judge

Date: July 30, 2015

---

[8]    Because the Court rejects Fears' contention that he can overcome the default of the sub-claim at issue under Martinez and Trevino, the Court need not address whether the rule established in Cullen v. Pinholster, — U.S. — , 131 S.Ct. 1388 (2011), would bar discovery on Claim II and any sub-claim of it. In Pinholster, the Supreme Court ruled that "review under [28 U.S.C.] § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits[,]" 131 S.Ct. at 1398, and "evidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." Id. at 1400.

14

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LEROY FEARS,                          )
        Petitioner,                 )        Civil Action No. 05-cv-1421
                                    )
        v.                          )        Judge Kim R. Gibson
                                    )
JOHN E. WETZEL, et al.,               )
        Respondents.                )

## ORDER

AND NOW this, **30th** day of **July**, 2015, it is hereby ORDERED that the

Petitioner's *Motion For Discovery Pursuant to Rule 6(A)* [ECF No. 48] is **DENIED**.

IT IS FURTHER ORDERED that the Respondents must file a combined answer and

memorandum of law in support of their opposition to the Petitioner's habeas claims on or before

**October 28, 2015**. The Respondents must respond to each of the Petitioner's claims for relief,

using the same claim number and in the same order as each claim raised by the Petitioner. The

Petitioner may file a reply to the Respondents' combined answer and memorandum of law within

30 days of service. The reply must be limited to those issues not previously addressed in the

petition for writ of habeas corpus and consolidated memorandum of law and it may not exceed

30 pages.

BY THE COURT:

Kim R. Gibson
United States District Court Judge